1  CROSNER LEGAL, P.C.
   Michael T. Houchin (SBN 305541)
2  mhouchin@crosnerlegal.com
3  Craig W. Straub (SBN 249032)
   craig@crosnerlegal.com
4  Zachary M. Crosner (SBN 272295)
5  zach@crosnerlegal.com
   9440 Santa Monica Blvd. Suite 301
6  Beverly Hills, CA 90210
7  Tel: (866) 276-7637
   Fax: (310) 510-6429
8  *Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CABRAL, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABERCROMBIE & FITCH CO.,<br><br>Defendant. | Case No. 8:24-cv-01521<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR A JURY TRIAL** |

# INTRODUCTION

1. Plaintiff Robert Cabral ("Plaintiff") on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby brings this action against Defendant Abercrombie & Fitch Co. ("Defendant" or "Abercrombie"), and upon information and belief and investigation of counsel, alleges as follows:

2. This is a class action suit brought against Defendant for violating the California Invasion of Privacy Act ("CIPA").

3. Defendant owns and operates the Abercrombie website, www.abercrombie.com (the "Abercrombie Website"), which sells apparel and accessories.

4. Unbeknownst to Plaintiff and consumers, Defendant knowingly and willfully assists a third party with intercepting confidential communications that contain consumers' sensitive financial information.

5. Plaintiff brings this action for damages and other legal and equitable remedies resulting from Defendant's violation of the CIPA.

# PARTIES

6. Plaintiff Robert Cabral is a resident of Orange County, California who purchased a product from the Abercrombie Website. Specifically, Plaintiff purchased a clothing item from the Abercrombie website on April 23, 2024. When purchasing the product on the Abercrombie Website, Plaintiff entered his personally identifiable information ("PII") and credit card information to complete the transaction.

7. When entering his PII and credit card information on the Abercrombie Website, Plaintiff reasonably expected that Defendant would keep this information private and not disclose it to third parties. However, Defendant disclosed such information to a third party, Signifyd, without Plaintiff's knowledge or consent.

1

CLASS ACTION COMPLAINT

8. Plaintiff would not have completed a transaction on the Abercrombie Website if he knew Defendant was disclosing his sensitive information to a third party.

9. Defendant Abercrombie & Fitch Co. is a Delaware corporation that maintains its principal place of business in New Albany, Ohio. At all times during the class period, Defendant was the owner and operator of the Abercrombie Website.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, and sale of products in California that it sells through the Abercrombie Website, specifically in this District. Thus, Defendant has intentionally availed itself of the markets within California through its operation of the Abercrombie Website in California and its sale of products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold products to Plaintiff and members of the Class in California through the Abercrombie Website. By selling products to consumers in California, Defendant has intentionally and expressly aimed conduct

at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiff resides in this District and purchased a product from the Abercrombie Website within this District.

### FACTUAL ALLEGATIONS

13. Last year, Americans lost a record $12.5 billion to online fraud.[1] More than 353 million Americans also became victims of a data breach.[2] Despite these concerns, online retailers, like Defendant, intentionally disclose information to other companies that is sensitive and confidential. When completing an online purchase, consumers will disclose their credit card numbers and mailing addresses. Consumers expect this information to be private and used only for the purposes of completing the transaction.

14. Defendant, however, assists a third party called Signifyd with intercepting this sensitive information to protect itself from fraudulent transactions.

15. Signifyd offers merchants like Defendant an online payment processing platform which merchants can integrate into their website for the

---

[1] James Reddick, *Americans lost a record $12.5 billion to online fraud last year*, The Record (March 6, 2024), *available at* https://therecord.media/fbi-internet-crime-report-2023

[2] PJ Randhawa, et al., *Number of data breaches continues to skyrocket, new report shows*, NBC 5 Chicago (Jan. 29, 2024), *available at* https://www.nbcchicago.com/news/local/number-of-data-breaches-continues-to-skyrocket-new-report-shows/3341066/#:~:text=Last%20year%2C%20more%20than%20353%20million%20Americans%20became%20victims.,-Watch%2024%2F7&text=The%20Identity%20Theft%20Resource%20Center,single%20year%2C%22%20Velasquez%20said.

purported purpose of processing consumer purchases.[3] However, Signifyd does not merely process transactions. Instead, Signifyd intercepts and indefinitely stores consumer PII and financial information into its fraud prevention network.[4] Once consumer PII is intercepted by Signifyd, it "will process this data through [its] machine learning platform to return a recommendation to [its] Subscribers as to whether to approve or decline a transaction or other event."[5]

16. Signifyd's risk management services are designed to protect retailers, rather than consumers, from fraud. Signifyd profits from its collection of consumer PII because it allows retailers to access the "Signifyd Commerce Network" where "data from thousands of global ecommerce retailers" is used to "proactively block emerging fraud trends while instantly recognizing and streamlining legitimate customers through the path to purchase" as shown below[6]



---

[3] https://www.signifyd.com/fearless-conversions/

[4] https://www.signifyd.com/privacy/

[5] *Id.*

[6] https://www.signifyd.com/fearless-conversions/

4
CLASS ACTION COMPLAINT

17. Signifyd also shares consumer PII that it collects from retailers like Abercrombie with other third parties such as third-party financial institutions, third-party banks, and third-party payment processors.[7]

18. Defendant aids, agrees with, employs, and conspires with Signifyd to embed code into the Abercrombie Wesbite to capture consumers' PIII. Defendant has integrated Signifyd on the Abercrombie website to process customer transactions as shown in the website code below:

```
HTTP/1.1  GET  REQUEST
METHOD: GET +
URL
+ https://cdn-scripts.signifyd.com/api/company_toolkit.js
HEADERS
+ Accept:            */*
+ Accept-Encoding:   gzip, deflate, br, zstd
+ Accept-Language:   en-US,en;q=0.5
+ Connection:        keep-alive
+ Host:              cdn-scripts.signifyd.com
+ Referer:           https://www.abercrombie.com/
+ Sec-Fetch-Dest:    script
+ Sec-Fetch-Mode:    no-cors
+ Sec-Fetch-Site:    cross-site
+ User-Agent:        Mozilla/5.0 (Windows NT 10.0; Win64; x64; rv:127.0) Gecko/20100101 Firefox/127.0
```

```
HTTP/1.1  GET  REQUEST
METHOD: GET +
URL
+ https://cdn-scripts.signifyd.com/api/script-tag.js
HEADERS
+ Accept:            */*
+ Accept-Encoding:   gzip, deflate, br, zstd
+ Accept-Language:   en-US,en;q=0.5
+ Connection:        keep-alive
+ Host:              cdn-scripts.signifyd.com
+ Referer:           https://www.abercrombie.com/
+ Sec-Fetch-Dest:    script
+ Sec-Fetch-Mode:    no-cors
+ Sec-Fetch-Site:    cross-site
+ User-Agent:        Mozilla/5.0 (Windows NT 10.0; Win64; x64; rv:127.0) Gecko/20100101 Firefox/127.0
```

---

[7] https://www.signifyd.com/privacy/

19. When a consumer places an order from the Abercrombie Website, Signifyd intercepts consumer PII that includes payment information (including credit card numbers, CCV numbers, and expiration dates), email addresses, phone numbers, IP addresses, and user account information. Signifyd intercepts this consumer PII in transit because the PII data is transmitted to Signifyd in real time after a consumer submits the information on the Abercrombie website.

20. Embedded code functions as "a wiretap" because it redirects communications to other persons while the website user communicates on the website.

21. Below is a diagram from the Signifyd website showing the order flow when a consumer makes a purchase demonstrating that consumer PII is intercepted in transit[8]:

---

[8] https://developer.signifyd.com/main/docs/getting-started

**Order Flow Steps**

Depending on your integration's constraints, you may decide to submit orders for guarantee either pre or post authorization, and there are a few key differences to pay attention to.

**1 BUYER BROWSES YOUR ONLINE STORE**
On every page load the Signifyd script tag or mobile SDK is loaded

DATA COLLECTED
- Device Information
- Browsing Behavior
*mobile & web

**2 BUYER PLACES AN ORDER**
When an order is placed by a buyer the order details are sent to Signifyd using the Checkout API / Sale API

DATA COLLECTED FROM ORDER
- Payment Information
- User Account
- Recipient
- Products
- Email
- Phone
- Shipments
- IP Adress
*mobile, web, phone

HTTP POST (mobile SDK/Web)

CHECKOUT API / SALE API

**3 SIFNIFYD REVIEWS THE ORDER FOR FRAUD**
Signifyd machine learning system will analyze each order for fraud.

PENDING

APPROVED WEBHOOK

**4 SIFNIFYD RETURNS A GUARANTEED DECISION**
Signifyd notifies your system asynchronously of the fraud decision through a webhook

DECLINED WEBHOOK

WORK FLOW
- Capture payment* and ship
- Send order fulfillment email
*if not previously captured

**5 BUYER'S ORDER IS FULFILLED**
Automate order fulfillment based on Signifyd guarantee decision

WORK FLOW
- Review Order
- Cancel and void/refund payment
- Send order cancellation email

22. Once Signifyd intercepts the consumer PII data from the Abercrombie website, the data is stored on the Signifyd Commerce Network whereby Signifyd profits from its use of the data.

23. The Abercrombie Website does not disclose that Signifyd is used to intercept consumer PII data nor does it disclose to consumers that their transactions are being processed by a third party.

24. Specifically, there is no disclosure on the payment screen indicating that Signifyd is involved and consumers cannot tell that Signifyd is obtaining or storing sensitive information, including financial information as shown below:



[Screenshot of Abercrombie checkout page showing "You Deserve It (1 item)" with a Camp Collar Summer Linen-Blend Shirt (Men's: 659541198, XL, Black Stripe, $60), myAbercrombie sign-in prompt, Checkout / PayPal buttons, Subtotal $60.00, Get Our Emails opt-ins for Abercrombie & Fitch and abercrombie kids, a "ROUND UP TO SHOW YOUR PRIDE" banner partnering with The Trevor Project with $5/$2/$1 and $0.20 RoundUp options, and a Submit Order button.]

25. Consumers think they are only sending their sensitive PII and financial information to Abercrombie.

26. However, unbeknownst to these consumers, Abercrombie assists Signifyd in intercepting and indefinitely storing this sensitive information.

27. Signifyd then monetizes this consumer information by incorporating it into its database and marketing its fraud prevention services (which utilize this data) to other merchants.

28. At no time are consumers informed nor do consumers consent to their sensitive information being disclosed and used in this manner.

## NO ADEQUATE REMEDY AT LAW

29. Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased products from the Abercrombie Website more than one year prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

30. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall data collection practices that violate consumers' privacy rights.

31. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to illegally share consumer PII with an undisclosed third party. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

32. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has

commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in California who made a purchase from Defendant's website, www.abercrombie.com, during the applicable statute of limitations.

34. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

35. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

36. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been injured by Defendant's practices.

38.     Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.     whether Defendant collected Plaintiff's and the Class's PII;

    b.     whether Defendant collected Plaintiff's and the Class's financial information;

    c.     whether Defendant unlawfully disclosed and continues to disclose its users' PII and financial information in violation of the CIPA'

    d.     whether Defendant's disclosures were committed knowingly;

    e.     whether Defendant disclosed Plaintiff's and the Class's PII and financial information without consent;

    f.     whether Defendant intentionally recorded Plaintiff and Class members' communications under the CIPA; and

    g.     whether Plaintiff and Class members' PII and financial information are content under the CIPA.

39.     Typicality: Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, placed an order on Defendant's Website and had his PII and financial information collected and disclosed by Defendant, and had his communications recorded by Defendant, without his consent.

40.     Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the CIPA claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has

retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

41. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

42. Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

43. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

## FIRST CLAIM FOR RELIEF

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 631

44. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

45. The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638. CIPA begins with its statement of purpose – namely, that the purpose of CIPA is to "protect the right of privacy of the people of [California]" from the threat posed by "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . ." Cal. Penal Code § 630.

46. A person violates California Penal Code § 631(a), if:

> by means of any machine, instrument, or contrivance, or in any other manner, [s/he] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or

telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [s/he] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [s/he] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . . . .

Cal. Penal Code § 631(a).

47. Thus, section 631 of CIPA covers three independent patterns of conduct: (1) "intentional wiretapping;" (2) "attempting to learn the contents or meaning of a communication in transit over a wire;" and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." (Cal. Penal Code § 631(a).)

48. Further, a person violates § 631(a) if s/he "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in the preceding paragraph. *Id.*

49. To avoid liability under § 631(a), a defendant must show it had the consent of all parties to a communication at the outset of the communication.

50. Plaintiff alleges that Defendant violates the aiding and abetting prong of S 631(a) because, at all relevant times, Defendant aided, agreed with, and conspired with Signifyd to track and intercept Plaintiff's and Class Members' internet communications while accessing www.abercrombie.com. These communications were intercepted without the authorization and consent of Plaintiff and Class Members.

51. Defendant, when aiding and assisting Signifyd's wiretapping and eavesdropping, intended to help Signifyd learn some meaning of the content in the form fields entered by Plaintiff and Class members.

52. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, Signifyd's payment platform falls under the broad catch-all category of "any other manner":

   a. The computer codes and programs Signifyd used to track Plaintiff and Class Members' communications while they were navigating www.abercrombie.com;

   b. Plaintiff's and Class Members' browsers;

   c. Plaintiff's and Class Members' computing and mobile devices;

   d. The computer codes and programs used by Signifyd to effectuate its tracking and interception of Plaintiff's and Class Members' communications while they were using a browser to visit www.signifyd.com; and

   e. The plan Signifyd carried out to effectuate its tracking and interception of Plaintiff's and Class Members' communications while they were using a web browser or mobile application to visit www.abercrombie.com.

53. The information that Defendant transmitted using Signifyd's payment platform constituted sensitive and confidential personally identifiable information.

54. As set forth above, Defendant violated CIPA by aiding and permitting Signifyd to receive its customers' sensitive and confidential online communications through www.signifyd.com without their consent.

55. As a result of the above violations, Defendant is liable to Plaintiff and other Class Members in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages. Cal. Penal Code § 637.2.

Additionally, Cal. Penal Code § 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendant in the future.

## SECOND CLAIM FOR RELIEF

## Violations of Unfair Competition Law

## Cal. Bus. & Prof. Code §§ 17200, *et seq.*

56. Plaintiff incorporates by reference all of the above paragraphs of this complaint as stated herein.

57. Defendant, Plaintiff, and members of the Class are "persons" as defined by the UCL. Cal. Bus. & Prof. Code § 17201.

58. Defendant is subject to the UCL. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for violations.

59. Here, Plaintiff only seeks injunctive relief under the UCL's "unlawful" prong.

60. "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

61. Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

62. Defendant has violated and is violated the UCL's "unlawful prong" as a as a result of its violations of California Penal Code § 631 as described above.

63. As a direct and proximate result of Defendant's acts, consumers have been and are being harmed—their right to privacy is being infringed. An invasion of privacy constitutes sufficient economic injury to confer standing under the UCL. Further, the PII here has real value and was unlawfully taken from Plaintiff and class members. Plaintiff and class members have unwittingly provided personal data in return for nothing. This type of data is estimated to have a price tag:[9]

| Age | Cost for Data Per Person | Percentage of Population | Total Demographic Cost |
|---|---|---|---|
| 18-24 | $0.36 | 11.92% | $14,253,466.27 |
| 25-34 | $0.11 | 21.80% | $7,791,894.90 |
| 35-44 | $0.12 | 20.30% | $8,368,383.54 |
| 45-54 | $0.27 | 13.76% | $12,346,312.34 |
| 55+ | $0.05 | 32.22% | $5,272,710.83 |

64. Pursuant to California Business & Professions Code § 17203, Plaintiff and members of the Class seek injunctive relief in the form of an Order requiring Defendant to cease the unlawful acts alleged herein.

65. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff and the Class seek recovery of their attorney's fees pursuant to the private attorney general doctrine codified in Code of Civil Procedure § 1021.5, or any other statutory basis.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

---

[9] PCMag, Chandra Steele, *How Much Is Your Personal Data Worth?* (Nov. 25, 2020), available at https://www.pcmag.com/news/know-your-datas-worth

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d. Ordering actual damages, punitive damages, and restitution;

e. Ordering statutory damages in the amount of $5,000 per violation;

f. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

g. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

h. Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: July 10, 2024                    CROSNER LEGAL, P.C.

                                        By:    /s/ Michael T. Houchin
                                               MICHAEL T. HOUCHIN

                                        9440 Santa Monica Blvd. Suite 301
                                        Beverly Hills, CA 90210
                                        Tel: (866) 276-7637
                                        Fax: (310) 510-6429
                                        mhouchin@crosnerlegal.com

                                        *Attorneys for Plaintiff and the Proposed Class*